Thruston PETTUS, Bradford Blossom and William E. Guy, Trustees upon Dissolution of St. Louis Merchants Land Improvement Company, Respondents and Cross-Appellants,

v.

CITY OF ST. LOUIS, a Municipal Corporation, Appellant and Cross-Respondent,

Ross Aviation Corporation, a Corporation, George Holtgrewe and Margaret Holtgrewe, Defendants.

No. 46697.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

As Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 12, 1959.

Charles J. Dolan, Acting City Counselor, St. Louis, for appellant City of St. Louis.

Finley & Lucas, Wilder Lucas, St. Louis, for cross-appellants.

LEEDY, Judge.

These are cross-appeals from a judgment for plaintiffs in their action to quiet title and in ejectment. The land lies in several tracts (designated as A to F, inclusive), contains in the aggregate approximately 48 acres, and is situate in the City of St. Louis. Defendant City of St. Louis appeals from the judgment in its entirety; and plaintiffs appeal only "on the amount of damages, and on the value of the monthly rents and profits" respectively awarded and fixed by the judgment in ejectment.

The city claims title to all of the property under certain tax deeds (twenty in number) from the collector of the city. It makes a further claim to the major portion of said property (tracts A, B and C, comprising 34.60 acres) by virtue of two sheriff's deeds given upon execution sales under benefit judgments in favor of the city in a certain condemnation proceeding.

The land in question was acquired in 1889 by St. Louis Merchants Land Improvement Company shortly after its incorporation in that year. The corporation underwent voluntary dissolution in 1911 by decree of the circuit court, which decree directed that certain persons (officers and directors) take charge of the remaining

assets (these lands) and administer the same as trustees. These trustees having died, successors were on November 8, 1928, appointed by the circuit court to further administer the assets which continued to include the property now in question. Within sixteen years all of these successor trustees had died, and on March 5, 1948, the present trustees were appointed as successors to said deceased successor and original trustees.

The taxes were paid up to and including 1930, after which no further taxes were paid. In accordance with the provisions of the Jones-Munger Law, Laws 1933, pp. 425–449 [1] (then applicable to the city), the collector of the City of St. Louis advertised for sale all of the real estate in question, announcing that he would offer it on November 5, 1936. The property was duly offered, but no bids were received. The following year the collector again advertised the real estate would be offered for sale on November 5, 1937. Again, no bids were received. The following year the collector again published a notice of the sale of the said lands for delinquent taxes, such sale to be held on November 12, 1938. At the sale held in conformity with such notice, the City of St. Louis was the sole bidder for such property. It bid $4.75 for each of the twenty parcels offered for sale. All of the real estate was sold to it on the payment to the collector of the total sum of $95, and certificates of purchase were delivered to the city.

On September 11, 1942, the collector delivered twenty collector's deeds to the City of St. Louis covering all of the land purchased by it at the sale held November 12, 1938. The deeds are admittedly in the form prescribed by statute, each bears the same date, September 11, 1942, and, except for descriptions, are alike. All of them were filed for record on October 21, 1942, and duly recorded.

This action was filed May 9, 1950, and in due time the city and its codefendants filed separate motions to dismiss, all based on the fact that it appeared from the face of plaintiffs' petition that they were seeking the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes, and such action had not been commenced within three years from the time the tax deeds were recorded, and hence barred by the three years' special statute of limitations (§ 11177, R.S.1939, now Section 140.590, RSMo 1949 and V.A. M.S.). The statute reads as follows: "Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes, except in cases where the taxes have been paid or the land was not subject to taxation, or has been redeemed as provided by law, shall be commenced within three years from the time of recording the tax deed, and not thereafter; provided, that where the person claiming to own such land shall be an infant, or a person of unsound mind, then such suit may be brought at any time within two years after the removal of such disability."

The motions were sustained, the petition dismissed with prejudice, and plaintiffs appealed to this court. On appeal the statute was held applicable so as to bar the suit as to the cancellation of the collector's tax deeds. On the theory that in suits under § 1684, R.S.1939; Section 527.150, RSMo 1949 and V.A.M.S., in relation to actions to ascertain interest and quiet title, "a party setting up title in himself, as here, is entitled to an adjudication of his existing title, and if he have no title the court should so adjudge or decree," and observing that "[p]laintiffs may be able to establish title notwithstanding the tax deeds," this court reversed the judgment of dismissal, and remanded the cause with directions "to hold the ruling on the special motions to dismiss in abeyance until the other issues presented in plaintiffs' petition be submitted for final adjudication and judgment." See

1. Now V.A.M.S. §§ 130.070, 139.080, 139.110, 140.080 et seq.

Pettus v. City of St. Louis, 362 Mo. 603, 242 S.W.2d 723, 729.

After remand, plaintiffs filed in the trial court their fourth amended petition (on which trial was had) wherein they alleged in detail substantially the same facts concerning consideration ("so shockingly inadequate in amount as to constitute a fraud," etc.), as contained in the petition before us on the former appeal, but adding the new allegation as to each tract that for such reason the deeds were "void upon their face and upon the facts aforesaid." It also contained, substantially, the other allegations of such former petition going to a great variety of matters other than that the deeds were void on their face. Such fourth amended petition occupies more than forty pages of the transcript.

■ The defendant relies heavily upon the former adjudication as controlling the disposition of the present appeal, on the theory, we suppose (although it is not so denominated nor developed as such in the argument), that the same became the law of the case. It will be seen by reference to the opinion that the matter raised and determined on the former appeal was that of whether the special three years' statute of limitations applied at all to quiet title suits involving cancellation of tax deeds under the Jones-Munger Law, and not whether the facts brought the case within the judicially imposed exception to such statute, namely, tax deeds void on their face, so as to entitle plaintiffs to cancellation of such deeds as a cloud upon their title. It is the latter question, as subsequently raised by amendment to the petition, with which we are presently concerned, and it not having been determined on the former appeal is therefore not foreclosed under the doctrine of law of the case.

■ A tax deed void on its face does not start the running of the three years' special statute of limitations, § 11177, R.S.1939, now § 140.590. Costello v. City of St. Louis, Mo., 262 S.W.2d 591, 595, 596; Mason v. Crowder, 85 Mo. 526; Pearce v. Tittsworth, 87 Mo. 635; Jamison v. Galloway, Mo., 254 S.W. 101.

■ The first question is whether it appears from the face of the deeds that the consideration paid at the tax sale is "so unconscionably inadequate as to shock the conscience of the court" (to use the terminology of plaintiffs' petition), rendering the deeds void on their face, and hence insufficient to set the special three years' statute in motion, as held in Costello v. City of St. Louis, supra. The question of whether a sale to one of the governmental units to which taxes are due constitutes as to it an extinguishment of such taxes, and to that extent furnishes consideration for the sale in addition to the bid price which should be considered on the issue of adequacy, is not raised, so "we will not of our own volition debate a question not mooted, but take the case as we find it."

■ Here each of the twenty deeds expresses a consideration of $4.75 for the parcel conveyed by it, which parcels variously contained from 1.2 acres to 7 acres, except that two of the deeds conveyed less than an acre (one of them 50/100ths, and the other 40/100ths). Some of the deeds also show dimensions—frontages on streets varying from 100 feet to 660 feet by depths of from 371 feet to 583 feet, lying in subdivisions. To be sure, the deeds do not disclose the nature of the properties, their physical characteristics and surroundings, whether improved or not, etc. There was testimony from which the court found the value of the properties to be in excess of $171,000 at the time they were sold for taxes, interest and penalties aggregating $20,-500. This testimony, however, avails plaintiffs nothing on the instant issue, and cannot be resorted to by us because the facts disclosed thereby do not appear upon the face of the deeds. The city does not undertake to defend the consideration, but takes the position that inadequacy does not appear from the face of the deeds. They cite Granger v. Barber, 361 Mo. 716, 720,

236 S.W.2d 293, 296: "Obviously, the gross inadequacy of consideration would not be apparent from the face of the deed alone and the decisions of this Court holding that a tax deed will be set aside where the evidence shows a gross inadequacy of consideration are of no assistance to appellants." But the later Costello case, supra, is to the contrary. There the tax sale was of a piece of property 30 by 130 feet on Mullanphy Street, in the City of St. Louis. It sold for $4.75, which was 15⅚¢ per front foot and netted only $1 to apply against total delinquent taxes of $749.52. Held: "Inasmuch as the deed itself shows upon its face that the Collector sold this improved city property for the unconscionably inadequate price of less than 16 cents per front foot, and inasmuch as such price is sufficient of itself to render the sale inherently void, the Collector's instant deed is void upon its face for this additional reason." [262 S.W.2d 596.]

■ This appears to be our first and only decision applying the void-on-its-face doctrine (as a judicially imposed exception to the three years' statute of limitations) to consideration. (As pointed out in 20 Mo. Law Review 87, 97, the cases cited in support of this ruling did not involve the question of whether the deed was void on its face because of the inadequacy of the consideration shown thereon, but rather were cases wherein there was a direct attack upon the sale on the theory that the inadequacy of the consideration amounted to fraud.) The city would distinguish the case on the ground that in Costello two of the plaintiffs were under legal disabilities— infancy and insanity, so that as to them the special statute had no application, and hence it was incumbent upon the trial court to try the case without regard to such statute; and for the further reason that "whether the statute should have been tolled only in favor of those under disabilities it is not now necessary to determine." Thus it will be seen that it is not contended that the holding is wrong, or that it should be overruled. It will be time enough to

examine that question if and when it is raised and briefed. Consequently it should be adhered to in the present circumstances.

The instant case deals with a much larger quantity of land than did Costello—48 acres as compared to a lot 30 x 130 feet. It appears from the descriptions that tracts D, E and F, containing about 14 acres, lie between the Mississippi River on the east and the adjacent railroad tracks on the west. The deeds to those tracts do not show descriptions in terms of front footage nor depth, as do the deeds to the remaining 34 acres, tracts A, B and C. For this reason, the tabulation below shows front footage only with respect to the latter tracts. A comparison of the controlling elements in Costello and this case follows:

|  | Instant case | Costello |
|---|---|---|
| Quantity: | 48 acres | Lot, 30 x 130 feet |
| Front footage: | 3557 (A, B & C) | 30 |
| Sale price per front foot: | .026¢ | 15.8¢ |
| Square footage: | 2,090,880 | 3900 |
| Sale price per square foot: | .0004¢ | .012¢ |

■ As this comparison demonstrates, here the situation is much more aggravated. A total consideration of $95 for six tracts aggregating 48 acres in one locality of the City of St. Louis is so grossly inadequate as to shock the conscience of the court, and so we must, and do, hold the collector's deeds void on their face for that reason.

Apart from the collector's deeds, the city also claims title to three of the tracts in question (A, 19.36 acres; B, 12.26 acres; C, 3.02 acres) by virtue of two sheriff's deeds. These deeds were made pursuant to a sale of such tracts under special execution for benefits assessed against them in a condemnation proceeding brought by the city for the widening of Broadway. The judgment assessing benefits was rendered January 1, 1929, execution thereon issued January 16, 1939, and sale held February 10, 1939. The deeds are dated March 3, 1939, and were filed for record May 10, 1940. Plaintiffs contend that the judgment

whereon the deeds are based is void, but in the view we take of the case we do not reach that question. For our purposes, the validity of the benefit judgment will be assumed. Plaintiffs' petition further alleged, and it is contended on this appeal, that the deeds are invalid for inadequacy of consideration so gross as to shock the conscience of the court.

■ No question of limitations is raised with respect to these deeds, so that in no event are we restricted to matters appearing on their face. The evidence warranted the following finding of fact made by the trial judge which we adopt:

"13. At the time of the Sheriff's sales, at which only what is designated as Tracts (A), (B), and (C) were sold, Tract (A), comprising an assembled tract of land of 19.36 acres, was reasonably worth at the time of the sale as assembled acreage, $100,-000. The City bid in the property at $2,204.45, or at approximately two per cent of its true value. Taking the average assessed value of this tract for the preceding eight years, which was $34,386, the amount bid represents only 6.4% thereof. Tract (B), comprising an assembled 12.26 acres, and Tract (C), comprising an assembled 3.02 acres, were reasonably worth, at the time of sale, $61,000. For this, the City bid $1,259.12, or again at approximately two per cent of their true value. Taking the average assessed value of these tracts for the preceding eight years, which was $37,-409, the amount bid represents only 3.4% thereof."

On the facts thus found the court concluded "that the sheriff's deeds are void because the consideration paid in the case of each deed is so inadequate as to shock the conscience of the court, and constitute a fraud on plaintiffs." It was decreed accordingly, and the propriety of such action is the question for determination. The city argues that the general rule is that mere inadequacy of price is not of itself sufficient ground to set aside an execution sale, etc., citing 33 C.J.S. Executions §. 233. The plaintiffs, on the other hand, rely on the exception to such rule, that is, where inadequacy of consideration is so gross as in itself to establish fraud, relief will be granted. As was said in Mangold v. Bacon, 237 Mo. 496, 521–522, 141 S.W. 650, 657: "That inadequacy of consideration is not treated in books on equity as a distinct head of equitable relief, but under the head of fraud, is nothing to the point. The mere name amounts to nothing. If the inadequacy is so inflamed under all of the facts as to spell fraud, then we have two things, each the equivalent of the other, viz., fraud and inadequacy."

■ Here the consideration in each of the sheriff's deeds was only about 2 per cent of the true value of the land, and this, under all the recent cases, must be regarded as so grossly inadequate as to shock the conscience of the court, entitling plaintiffs to set aside the sale for such reason, and we so hold. Bussen Realty Co. v. Benson, 349 Mo. 58, 64, 159 S.W.2d 813, 816; Rudd v. Scott, 351 Mo. 1206, 175 S.W.2d 774; Adams v. Smith, 360 Mo. 1082, 232 S.W.2d 482; Ellis v. Powell, Mo., 117 S.W.2d 225; J. C. Nichols Inv. Co. v. Roorbach, Mo., 162 S.W.2d 274; Swain v. Boeving, Mo., 175 S.W.2d 591; Johnson v. McAboy, 350 Mo. 1086, 169 S.W.2d 932; Kelso v. Hubble, Mo., 163 S.W.2d 926; Davis v. Johnson, 357 Mo. 417, 208 S.W.2d 266.

Defendant's motion for new trial did not assign error with respect to the judgment on the count in ejectment, and the city has filed no brief on that aspect of the case. Plaintiffs appeal only from that part of the judgment in ejectment "on the amount of damages, and on the value of the monthly rents and profits." They claim said sums are inadequate and that under alternative methods of computation, they are entitled to sums ranging from $20,125.38 to as much as $38,598.92 as damages, and to a much larger figure than that fixed by the judgment as the value of the monthly rent and profits. Under this opin-

ion as originally adopted plaintiffs were denied review of this portion of the case because, so the opinion found, plaintiffs' allegations of error had not been preserved because not presented to the trial court in a motion for new trial. The transcript shows we erred in making that finding, and so, on our own motion, we modify our opinion by substituting the following in lieu of what it formerly said with respect to plaintiffs' cross-appeal.

The court entered judgment for plaintiffs against the city for unlawfully withholding possession of all the lands in question from September 22, 1949, (the date of the notice to defendant city of plaintiffs' claim of title) to the date of judgment, a period of eight years and one month, in the total sum of $4,222.42, being the amount of rents collected by the city, offset by the sum of $20 taxes paid by the city, and further offset by the sum of $5,597.96, being the amounts due on benefit judgments in condemnation against said lands, plus interest and costs, thus making a total of $5,-617.96, resulting in a judgment for the defendant city in the sum of $1,395.54. The court further fixed the value of the monthly rents and profits at $225 per month.

■ Plaintiffs complain that it was improper to limit their damages to (and base the value of the monthly rents and profits upon) that amount which it was stipulated the city had actually received as rentals for the property. This contention is based on the fact that their expert witness gave testimony to the effect that the reasonable rental value of the property was $4,800 per year. Plaintiffs' claim is that such testimony was uncontradicted. The city's expert on rental values did not put a dollar-and-cents rental value upon the property, but stated that because of its nature, a tenant could almost write his own ticket on the land; that on a temporary or short term it would be very low. We need not further develop the proofs, pro and con, because we are disposed to defer to the view of the trial court. It found that plaintiffs' evi-

dence was to the effect above stated, but, nevertheless, refused to apply the $4,800 figure as the measure of reasonable rental value, because (as finding No. 14 expressly states): "The court is not satisfied with plaintiffs' evidence as to the availability of tenants at said rental * * * during the period in question." In other words, the court felt that the plaintiffs' own proof was insufficient to support the figure fixed by their expert. We find nothing in the record to cause us to take a different view. Consequently, the judgment, in its entirety, should be, and it is, affirmed.

We do not decide whether the right of the taxing authorities to enforce taxes that may have become due on the real estate in question is prejudiced by the decision herein. That question has not been presented.

All of the Judges concur.